[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: CUSTODY OF NICOLE AND KARISSA TODD
These two children are the issue of the marriage between the plaintiff father and the defendant mother. They are now ages ten and eleven respectively.
The parties separated in July of 1989 and were divorced on August 20, 1990. There is a tortured history of custodial problems which culminated in an agreement giving to plaintiff father temporary custody of both children as well as Jennifer Guylas, age 14, who was the defendant's child from a previous relationship. She also, by agreement, has been in the custody of the plaintiff. (Unfortunately the tactics of the defendant mother have so undermined Jennifer's relationship with the plaintiff and her half sisters that the court envisions them growing up separately and apart. A sad, sad situation, created primarily by the defendant mother's disastrous dealings with her children over many, many months.)
Because these children have been subjected to unhealthy treatment during this temporary custody phase, the court now attempts to bring some permanency and stability into the lives of these two children. (The court does not decide the issue of Jennifer's custody at this time.)
The court heard credible testimony from Veronica Horton of the Family Relations Division of the Court. Ms. Horton is an experienced caseworker who has worked on about 350 custody cases.
Ms. Horton, the children's attorney and the testimony of the parties paint a bleak picture of inept people attempting to perform the most important job our society assigns to adults. . . .parenting.
Ms. Horton in fact described the parties as "immature adults". Mother's ineptitude was perhaps magnified by a probable incestuous relationship during her own childhood.
During the period of time that mother has physical custody of these children, she demonstrated that she had no concept of the developmental needs of children and was largely incapable of imposing any reasonable structure or discipline. The children missed enormous amounts of school and one did not even receive proper medications. One child, Nicole had a bowel problem which resulted in treatment at three hospitals.
Besides love, what are more important to a child's development CT Page 3905 than an education, healthcare and proper parental guidance. The latter three were noticeably absent during mother's term of custody. As a result the children were confused, manipulated and one even found her way to the juvenile court for her school absenteeism. In Ms. Horton's words, these children became "parentified", that is because of mother's failure to fill her role the children switched roles and became parent like.
Every effort from full physical custody in mother to full custody in father with liberal visitation in mother failed miserably. In Ms. Horton's words, "the problems did not go away."
In addition to the problems already stated there was, and is, another mother created situation which impels both Ms. Horton and the court to a rare, but necessary, conclusion as to mother's further contact with these damaged children.
This additional situation, which existed even at the time of this hearing, was mother's continuing and callous undermining of efforts by father, the courts and professionals to create a bearable home life for these children.
Examples of this undermining are legion. A few will suffice. The oldest child was told by mother that this court proceeding would determine if she would go to an "insane asylum" or live with mother. This was said to encourage the child to exhibit behavior that would obviously comport to the latter rather than the former. This untruth has caused emotional manifestations that we can see now and most assuredly will see in the future.
All three children were constantly pressured by mother to say bad things about their father. All three were shown all court papers by mother with untruthful commentary. They were told to write letters to their attorney reciting such "bad things" or they would never have a chance to see their mother again.
Such letters were sent. All were on the same stationary with the same format and words. Orchestration by mother is a fair inference.
The oldest daughter, whose problems are the most troublesome to the court has perhaps felt the intellectual and emotional barrages from mother the worst.
She had returned to the plaintiff's residence after living in what Ms. Horton called a "playpen existence" with mother. Mother set absolutely no boundaries including, of course, the need to attend school. On the stand mother lamented "what was I to do if she doesn't want to go to school, force her?" Every reasonable person in the courtroom knew the answer to that question. Mother did not.
It comes as no surprise that when Jennifer entered the structured CT Page 3906 environment of the plaintiff that there would be problems in adjusting. Jennifer acted out. She had tantrums, used x-rated language to the plaintiff and threatened to report him for child abuse.
The recommendation of Mr. Horton to the court is a heavy one. It is only the second time in her career that she has made such a recommendation. She has reached the point where she "refuses to see these children deteriorate further". The court agrees.
The court finds that it is in the best interest of Nicole and Karissa Todd that their father have sole physical custody of them.
This is not a decision that mother contests. Mother shall not have visitation except in a therapeutic setting approved by father and the childrens' attorney. Mother is not to have any contact with the children including telephone or mail contact. Enough havoc has already been done. Releases are to be executed by all parties and children for any approved counselling activities. Both parents are ordered not to discuss the other parent with the children even in a therapeutic setting. Mother is ordered to continue to pay support.
GILL, JUDGE